State vs. Foster.

## No. 142.

### THE STATE OF LOUISIANA VS. JOE FOSTER.

The fact that one presented as a juror has formed an opinion from rumours of the case and has expressed it, does not disqualify him if he avers that the rumours would not influence him as a juror, and that he will be guided by the evidence in rendering a verdict.

The exercise of a lower judge's discretion in granting or refusing a continuance will not be disturbed, if it has been done soundly and not harshly or arbitrarily.

A prayer or motion for a second continuance for the same cause, for which one has already been granted, is entitled to less favour than the original application.

Conversations with the prisoner touching his identity are admissible to prove that fact, no inducement, threat or promise having been made to him or in his presence.

APPEAL from the Eleventh District Court, Parish of Natchitoches. *Pierson*, J.

---

*D. C. Scarborough*, District Attorney, for the State, Appellee.

*Ponder & Porter* for Defendant and Appellant.

---

The opinion of the Court was delivered by

MANNING, J.  The defendant was convicted of rape and was sentenced to be hanged.  His appeal presents three objections to the legality of the conviction, embodied in as many bills of exception.

1.  J. C. Cammack, a juror, was challenged for cause by the defendant, but the court ruling that the cause was not good, he was challenged peremptorily.  The cause of challenge was that the proffered juror had formed and expressed an opinion on the case, based on rumour, and was a man of strong prejudices.

The examination of the juror on *voir dire* was;—" I have read something in the newspapers about this case; have heard the prevailing rumours about it, and have expressed an opinion based upon those rumours. I am a man of strong feelings and prejudices generally.  I do not know the prisoner; do not know anything about the case; don't know the witnesses; have no knowledge of the facts; have no bias for or against the prisoner; have no strong feeling against him personally, or his case; believe that I can be guided by the evidence in rendering a verdict, and that I can disregard the impression produced by the rumours. I do not think the rumours I have heard would influence me as a juror."

If the men who disclose that they have strong prejudices as a characteristic are to be excluded from the jury-box, the list of competent jurors will be shortened at the wrong end.  He who frankly discloses his own mental peculiarities, but as frankly avows they cannot hinder him from doing his duty, will be a much more impartial weigher of evidence, and is a fitter juror than one who conceals the fact that he

has heard rumours, or is so uncertain of himself that he cannot tell whether the rumours or the newspapers would influence him or not. There is nothing in the answers of the juror that affect his competence, and the prisoner was therefore properly driven to his peremptory challenge.

2. A continuance was refused for the absence of a witnes. The lower judge assigns as reasons for his refusal, that at a previous term the prisoner had obtained a continuance for the absence of several witnesses, and among them this one who was again absent; that no attachment had been asked for the witness, and the particular matter he was expected to prove was an *alibi,* and other witnesses were present to prove the same and had testified relative thereto, and finally the court believed the application was a pretext for delay.

It has been so often said it has become trite, that the trial judge is entrusted with a large discretion in granting or refusing continuances, and it is thoroughly well settled that if his discretion has been soundly exercised, and not harshly or arbitrarily, his ruling will not be disturbed. A request for a second continuance for the same cause as the first continuance was obtained strengthens the supposition that the main object was delay, and the judge no doubt rightfully interpreted the prisoner's motive.

3. The third bill was to the testimony of a deputy-sheriff as to the identity of the prisoner, which was that he had been sent to Shreveport to inspect the prisoners there in jail to ascertain if the accused was among them, and he recognized one of them as the accused. He then detailed his conversation with the prisoner. The objection seems to be to the admission of this conversation in evidence, the bill characterizing it as hearsay.

The proof of identity was made independent of the detailed conversation, but the conversation was admissible for it is not pretended that the prisoner made any confession, and that objection to its admission is made on that score. The sheriff said to the prisoner, " I saw you on such a morning at or near Sinnott's station on the railroad," who replied " no, I came here all the way on the cars." The sheriff rejoined, " I saw on your breast a spot of blood when you passed me on the railroad track," and the accused answered, " oh no, that was red paint I got off the colored quilt we slept under at Alexandria." The sheriff exclaimed, " oh pshaw Jo, you must be the man," and there was no answer.

We are at a loss to perceive why this is inadmissible. What weight it should have—whether any—was matter for the jury, but they were entitled to hear it. Wharton Crim. Ev. 679.

Judgment affirmed.